**FILED**
**Aug 27, 2020**
**09:52 AM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



### TENNESSEE BUREAU OF WORKERS' COMPENSATION
### IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT NASHVILLE

| | | |
|---|---|---|
| **CHARLES JENKINS-QUEEN, III,** | ) | **Docket No. 2019-06-0971** |
| **Employee,** | ) | |
| **v.** | ) | |
| **MEDICAL NECESSITIES &** | ) | **State File No. 30370-2018** |
| **SERVICES, LLC,** | ) | |
| **Employer,** | ) | |
| | ) | **Judge Joshua Davis Baker** |
| **BRIDGEFIELD CASUALTY** | ) | |
| **INSURANCE COMPANY,** | ) | |
| **Carrier.** | ) | |

_____

## EXPEDITED HEARING ORDER
_____

The Court convened an expedited hearing on July 30, 2020, to determine whether Mr. Jenkins-Queen is likely to prove at a final hearing that he suffered a compensable aggravation of a preexisting condition that would entitle him to temporary disability benefits and surgery. In Mr. Jenkins-Queen's own words, he is a "cracked egg." The Court agrees that his claim suffers from two significant cracks─his own credibility problems, and the fact that another physician recommended the same procedure in 2012 that Mr. Jenkins-Queen now attempts to link to work at Medical Necessities. The Court holds he is unlikely to prove he suffered a compensable aggravation and denies his requested relief at this time.

### Claim History

Medical Necessities hired Mr. Jenkins-Queen to deliver and install medical equipment. In 2018, he alleged work injuries from two incidents: one when he slipped and fell on ice, and another when a customer yanked his arm to pull him out of a vehicle.[1]

---

[1] At the hearing, the Court consolidated docket no. 2019-06-0765 and state file no. 3609-2018 into docket no. 2019-06-0971 and state file no. 30370-2018, as both cases have common questions of law.

Medical Necessities accepted both claims and provided treatment with Dr. Edward Mackey, an experienced spine surgeon. After roughly ten months of treatment, Dr. Mackey recommended an anterior cervical discectomy and fusion (ACDF) for a disc extrusion at level C5-6 of his spine. During nearly ten months of treatment, Dr. Mackey did not know that his patient had a 2012 cervical injury.

In fact, Mr. Jenkins-Queen had two preexisting injuries. Dr. Brian Cuddy performed an ACDF at C6-7 in 2001. Then, in 2012, he prescribed extensive conservative treatment for a disc extrusion—the same disc extrusion Dr. Mackey treated as a presumed work injury in 2018. Like Dr. Mackey, Dr. Cuddy recommended an ACDF at C5-6 for the disc extrusion. Because Mr. Jenkins-Queen could not afford the surgery, he received epidural steroid injections instead, until he moved to another state about a year later.

Dr. Christopher Kauffman, a spine surgeon, examined Mr. Jenkins-Queen, reviewed his medical records, and testified about the preexisting injuries. He compared the 2012 and 2018 MRIs and noticed "no acute changes" and a "typical aging process or progression of the osteophyte or arthritic process." Therefore, he did not believe either work injury necessitated the recommended surgery or caused anything other than a cervical sprain or strain. Rather, he believed the 2001 fusion caused stress on the adjacent level at C5-6, making it more arthritic and creating the disc extrusion seen in 2012.

About a month after that evaluation, Medical Necessities confronted Dr. Mackey with Dr. Kauffman's conclusion, and Dr. Mackey initially agreed. On a March 24, 2019 questionnaire, he marked that he could not state with reasonable medical certainty that the work injuries necessitated the recommended surgery, nor could he state the cause of the C5-6 condition.

However, just four days later, Dr. Mackey changed that opinion. When asked during his deposition about this change, he explained that speaking to Mr. Jenkins-Queen during a March 28 office visit had persuaded him. He testified, "[Dr. Kauffman] made it sound like [Mr. Jenkins-Queen] was persisting in his symptoms. [Mr. Jenkins-Queen] made it clear that he was asymptomatic for four years. And if that's the case, then I think the injury did tip him over." Because Mr. Jenkins-Queen worked at full duty before the accident and sought no treatment during the intervening years, Dr. Mackey concluded the work injuries had permanently aggravated his preexisting injury.

This point was so important to his opinion that Dr. Mackey invited defense counsel to prove to him that Mr. Jenkins-Queen received treatment or had symptoms from 2013 to 2017. Counsel responded that he might not have sought treatment during that period because he could not afford it, rather than because he did not need it. Similarly, Dr. Kauffman offered that "[Mr. Jenkins-Queen's] tolerance for the symptoms may have changed" rather than his need for medical treatment.

2

Ultimately, Dr. Mackey did not identify anything that differed between the MRIs and treatment records from 2012 and 2018. On cross-exam, he acknowledged that Mr. Jenkins-Queen had a disc protrusion at C5-6 causing radicular symptoms in his upper extremities in the C6 distribution in 2012, and he has that same problem now.

In addition to the previous injuries, Mr. Jenkin-Queen's case is burdened by questions of his credibility. Medical Necessities presented evidence suggesting he has misrepresented facts for personal or financial gain, often at a company's or someone else's expense. Mr. Jenkins-Queen's criminal past includes convictions for arson with intent to defraud, theft and forgery. He intentionally set fire to his home for insurance money; he stole a customer's credit card information and charged $50,000; and he forged court documents to shift responsibility for a burdensome credit card debt to an ex-girlfriend. Mr. Jenkins-Queen acknowledged stealing a person's identity and using aliases to evade law enforcement. He also admitted falsifying resumes or employment applications to conceal gaps in his employment history due to incarceration.

Most recently, Rebecca Hughes, who dated Mr. Jenkins-Queen for two years after his work injuries, claimed via deposition that he manipulated her into fully supporting him, exploited her permission to use a vehicle and credit cards, and left her bankrupt. She said that he drove her car to Georgia and lived there for weeks at a time toward the end of their relationship. He told her his son needed him and that he would soon return to Tennessee with the car. She now believes that he just wanted to continuing using her car and credit cards. Concerning her credit cards, Ms. Hughes said a hardware store called her once to ensure that a purchase made on her credit card in Georgia was authorized. Mr. Jenkins-Queen spoke to her from the store and convinced her he needed lumber. She later discovered instead he had purchased gift cards. According to Ms. Hughes, she could not file criminal charges against him, because she had authorized the purchase.

**Findings of Fact and Conclusions of Law**

The central focus of Mr. Jenkins-Queen's claim is whether he suffered an aggravation of his preexisting condition that arose primarily from his employment, thereby entitling him to corrective surgery and temporary disability benefits. To succeed, he must present evidence showing he would likely prevail at a final hearing in proving an aggravation of his preexisting condition arose primarily from his work. *See* Tenn. Code Ann. § 50-6-239(d)(1) (2019); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *9 (Mar. 27, 2015).

This claim is determined by two intertwined elements: Mr. Jenkins-Queen's credibility and the medical proof. The Court finds neither in his favor.

Turning first to credibility, Mr. Jenkins-Queen is not credible. Although he testified steadily, calmly and was somewhat forthcoming about his past, the weight of his misdeeds

3

and their deceptive nature cast doubt on his truthfulness and the veracity of his statements to Dr. Mackey about the condition of his neck.

Dr. Mackey stated that Mr. Jenkins-Queen suffered a work-related aggravation of his preexisting neck condition that required surgery. As the authorized treating physician, the law presumes his causation opinion is correct and his treatment recommendations are reasonable and necessary. *See* Tenn. Code Ann. § 50-6-102(14)(E). Because the linchpin of Dr. Mackey's opinion is an assurance from Mr. Jenkins-Queen that he was asymptomatic before getting hurt at work, Dr. Mackey's opinion is only as good as Mr. Jenkins-Queen's word. Because the Court found Mr. Jenkins-Queen non-credible, the Court also finds Dr. Mackey's opinion non-persuasive.

In addition to the foundational concerns plaguing Dr. Mackey's opinion, the Court also disagrees with his reasoning. The Workers' Compensation Law excludes recovery for an aggravation of a preexisting condition "unless it can be shown to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment." *Id.* at § 50-6-102(14)(A). Although Dr. Mackey used the word "aggravated" in his deposition, he failed to identify how the work accident aggravated, worsened, or changed Mr. Jenkins-Queen's preexisting condition. Further, he also agreed that the MRIs from 2012 and 2018 show the same injury and need for treatment without any identifiable anatomical change.

Dr. Kauffman, on the other hand, reviewed the same evidence but reached a different conclusion. Like Dr. Mackey, he could not determine how the work injury aggravated Mr. Jenkins-Queen's preexisting condition. He also agreed that the 2012 and 2018 MRIs showed the same injury and need for treatment without evidence of anatomical change. In the end, Dr. Kauffman believed Mr. Jenkins-Queen suffered only a cervical sprain or strain, which required no surgery.

These competing opinions leave the Court with a choice, and the Court chooses Dr. Kauffman. A trial court generally has the discretion to choose which expert to accredit when there is a conflict of expert opinions. *Kellerman v. Food Lion, Inc.,* 929 S.W.2d 333, 335 (Tenn. 1996).

In comparing the two opinions, the only real difference between them comes from Dr. Mackey's reliance on Mr. Jenkins-Queen's statements about his neck condition before getting hurt at work. As the Court found his testimony non-credible, the Court discounts Dr. Mackey's causation opinion and credits Dr. Kauffman's. On this record, Mr. Jenkins-Queen cannot show a likelihood of success at a final hearing.

**IT IS ORDERED** as follows:

1. The Court denies Mr. Jenkins-Queen's request for benefits.

2. The Court sets this claim for **a scheduling hearing on October 19, 2020, at 9:00 a.m. Central Time.** The parties must call (615) 741-2113 or toll-free at (855) 874-0474 to participate. Failure to call might result in a determination of the issues without the party's participation.

**ENTERED August 27, 2020.**

_____
**Joshua Davis Baker, Judge**
**Court of Workers' Compensation Claims**

## APPENDIX

Exhibits

1. First Report of Injury
2. Wage Statement
3. Choice of Physician
4. Deposition of Dr. Edward Mackey
5. Deposition of Dr. Christopher Kauffman
6. Rule 72 Declaration of Rebecca Hughes
7. Deposition of Ms. Rebecca Hughes
8. Video of Phone Call between Mr. Jenkins Queen and Ms. Hughes
9. Medical Records
10. Plaintiff's Interrogatory Responses Nos. 2, 7, and 11
11. Resume of Mr. Jenkins Queen
12. Employment Application of Mr. Jenkins Queen
13. Complaint from the Circuit Court of Davidson County

Technical Record

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing

## CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent as indicated on August 27, 2020.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Andrea Stilgenbauer, Employee's Attorney | | | X | andrea@poncelaw.com, Andrew@poncelaw.com |
| Catherine Dugan, Employer's Attorney | | | X | Cate@petersonwhite.com Kristina.boyd@petersonwhite.com |

_____

**Penny Shrum, Court Clerk**
**Court of Workers' Compensation Claims**
Wc.courtclerk@tn.gov



<u>Expedited Hearing Order Right to Appeal</u>:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board. To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence. The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement. All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

Docket No.: _____

State File No.: _____

Date of Injury: _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____   ☐ Motion Order filed on _____

☐ Compensation Order filed on_____   ☐ Other Order filed on_____

issued by Judge _____.

### Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

### Parties

**Appellant(s)** (Requesting Party): _____ ☐ Employer ☐ Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

## CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 ____.

_____
*[Signature of appellant or attorney for appellant]*